### Rose Zoeller, Defendant in Error, v. Court of Honor, Plaintiff in Error.

### Gen. No. 16,330.

INSTRUCTIONS—*effect of emphasizing particular issue.* If the court so emphasize a particular issue as that the jury may either regard it as paramount or as the only issue to be determined, error is committed and a reversal will be ordered.

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed and remanded. Opinion filed March 28, 1912.

FRANCIS J. SULLIVAN, for plaintiff in error; WM. B. RISSE, of counsel.

HENRY E. MURPHY, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an action, commenced in the Municipal Court of Chicago, by Rose Zoeller (hereinafter designated as plaintiff), as beneficiary under a certificate of insurance issued to Jozefa Koranda, mother of plaintiff, by the Court of Honor, an Illinois fraternal benefit society (hereinafter designated as the society), to recover the sum of $975, claimed to be due plaintiff under the terms of said certificate. A jury trial was had, resulting in a verdict and judgment in favor of plaintiff for $975, to reverse which judgment this writ of error is prosecuted.

On October 5, 1907, the application for insurance was signed by Jozefa Koranda; on October 14th, the certificate was issued by the society, and on October 17th, the same was delivered to the insured, and she signed an acceptance thereof, and an agreement to all of its conditions; on November 5, 1907, Jozefa Koranda died; on November 20th, written proofs of death were filed with the society, showing that the cause of death was strangulated umbilical hernia, and subsequently the society refused to pay the claim on the ground that false statements were made in the application.

It appeared from the evidence that the deceased was a member of the society at the time of her death, and that she had paid her dues; that, at the time she made application, a medical examiner of the society, Dr. Wanicek, asked her all the questions mentioned in the blank form of application and he wrote down on said blank the answers which he says she gave, after which she affixed her signature; that he made a partial examination of the person of the applicant, but did not extend that examination below the chest; that plaintiff, the beneficiary, was either in the same or an adjoining room when the questions in the application blank were asked of the applicant and answered by her; that

plaintiff testified that she heard the medical examiner ask her mother if she was ruptured, that she replied that she was, that she was then asked if she wore a support, and that upon her replying in the affirmative, the examiner said, "You are O. K. then; if you wear a support, we pass you".

The certificate, or policy, which was issued to the deceased, set forth that the application had been accepted upon the faith of the warranties therein contained and the medical examination therewith, and that said application and medical examination, the constitution, laws and rules of the society, and the certificate should "constitute the complete and only contract between the benefit member and the society". The material parts of the application, which was signed by the deceased in the manner aforesaid, are that she declares and warrants, (1) that she is now of "sound body and mind, in good health, and free from disease or injury", (2) that this application, including therein the succeeding pages, and the law of the society "shall form the sole basis of my admission into, and continued membership in", the society, and of the benefit certificate to be issued, and (3) that "any untrue or fraudulent statement or answer made to the district medical examiner, or any concealment of facts, intentional or otherwise, in this application, or in the succeeding pages, * * * shall forfeit the right of myself and that of my beneficiaries to any and all benefits". In the "succeeding pages" (at the end of which the deceased also affixed her signature), appear the following answers:

"10. Have any facts regarding your past health been omitted? Ans. No.

17. Have you had any serious illness, local disease, or personal injury? Ans. Yes. If so, what? Quinsy.

22. Are you ruptured? Ans. No.

30. Is there anything to your knowledge, in your physical condition, family or personal history, or hab-

its tending to shorten your life, which is not distinctly set forth above? Ans. No.

33. Is your life insured? Ans. Yes. If so, in what societies and companies and amount in each? Ans. Bohemiam Society".

It further appeared from the evidence that the deceased, at the time of signing said application (and for many years prior thereto), had a serious rupture or hernia, and wore a support, and that her death, thirty-one days later, was caused by said rupture, and that she was in fact insured in two other societies, instead of one, as stated in said application.

In delivering the instructions to the jury, the trial court, having been requested by the defendant society to submit a question of fact for special finding by the jury, said:

"In addition to your general verdict, gentlemen, you will answer this question; 'Did Jozepha Koranda tell the medical examiner at the time she was examined for her policy of insurance in this case that she was not ruptured?' If you come to the conclusion that she told the medical examiner that she was ruptured you will answer this question 'Yes'. If you come to the conclusion that she told the medical examiner that she was not ruptured then you will answer it 'No'. *It is simply a question of what she told the medical examiner.* That is what you are to find in this case and you will answer the question, and in addition to that you will find the general verdict".

The jury by its special verdict answered the question, "No", and further specially found that she "told the examining physician she was ruptured". Counsel for the society contends that the language used by the trial court in the above instruction, tended to confuse the jury, and, further, that the language of the court, "it is simply a question of what she told the medical examiner; that is what you are to find in this case," also tended to influence the jury in its general verdict, in that it suggested that what the deceased said to the medical examiner was the only issue in the case.

After a careful examination of the record we are of the opinion that the instruction complained of was prejudicial to the rights of the society, and erroneous. The judgment is, therefore, reversed, and the cause remanded.

*Reversed and remanded.*